UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA SCHMOLL, | ) | CIVIL ACTION NO. 3:19-CV-739 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Sandra Schmoll, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED, and this case will be REMANDED for a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND & PROCEDURAL HISTORY

On June 24, 2016, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 8-2, p. 16). In this application, Plaintiff alleged she became disabled as of March 31, 2013, when she was fifty-three years old, due to the following conditions: clinical depression, anxiety, and fibromyalgia. (Admin. Tr. 157; Doc. 8-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands. (Admin. Tr. 185; Doc. 8-6, p. 34). Plaintiff has at least a high school education. (Admin. Tr. 22; Doc. 8-2, p. 23). Before the onset of her impairments, Plaintiff worked as a real estate agent, medical receptionist, and file clerk. *Id*.

On September 6, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 8-2, p. 16). On September 22, 2016, Plaintiff requested an administrative hearing. *Id*.

On April 4, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). *Id.* On May 7, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 23; Doc. 8-2, p. 24). On May 14, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 134; Doc. 8-4, p. 29).

On March 7, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 8-2, p. 2).

On May 2, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court "Reverse the Decision below and award the Plaintiff, Sandra Schmoll, disability benefits under Title II of the Social Security Act based on her disabilities with an onset date of March 1, 2013 and continuing after, with cessation," and any "further relief as this Honorable Court may deem justified." *Id.*

On July 29, 2019, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations

and is supported by substantial evidence. (Doc. 7 ¶18). Along with the Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 9) and the Commissioner's Brief (Doc. 11) have been filed.  Plaintiff did not file a reply. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
     SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

_____

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 7, 2018.

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are

consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV. DISCUSSION

Plaintiff raises the following issue in her brief:

Whether the Administrative Law Judge committed reversible error in finding that the evidence of record was insufficient to establish that the claimant could not engage in substantial gainful work activity as defined by the social security Act because the Administrative Law Judge findings are not rational, are not based on substantial competent evidence or record and are not in accord with applicable case law.

(Doc. 9, p. 6). This "issue" or statement of errors does not clearly identify the issues raised in Plaintiff's brief and simply states that the ALJ's decision is not supported by substantial evidence. *See* L.R. 83.40.4 (requiring Plaintiff to set for specific errors wat the administrative level which entitle Plaintiff to relief. And explaining that a general argument that the findings are not supported by substantial evidence is not enough). I construe Plaintiff's brief as alleging the following four issues:

(1)     The ALJ should not have credited the opinion of Dr. Sworen;

(2)     The ALJ should have given greater weight to the opinions of Doctors Karrigan and Cote;

(3)     The ALJ did not consider the full extent of Plaintiff's deficits in concentration; and

(4)     The ALJ's RFC assessment is not supported by substantial evidence because he discounted the only medical opinion about Plaintiff's physical functional capacity.

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2016. (Admin. Tr. 17; Doc. 8-2, p. 18). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 1, 2013 (Plaintiff's alleged onset date) and March 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr.

17; Doc. 8-2, p. 18). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): adjustment disorder with depressed mood, and fibromyalgia. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18; Doc. 8-2, p. 19).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) except:

> the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and can occasionally climb ladders, ropes, and scaffolds. Claimant is limited to performing, simple routine tasks. She is limited to making simple work-related decisions. Claimant can frequently respond appropriately to supervisors, co-workers and the public. Claimant's time off task can be accommodated by normal breaks.

(Admin. Tr. 19; Doc. 8-2, p. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 22; Doc. 8-2, p. 23). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id.* To support his conclusion, the ALJ relied on testimony given by a vocational expert

during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Janitor, DOT# 381.687-018; Hand Packager, DOT #920.587-018; Laundry Worker, DOT# 361.685-018. (Admin. Tr. 23; Doc. 8-2, p. 24).

   B.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS BY DOCTORS COTE AND KERRIGAN EVIDENCE

On March 26, 2018, primary care physician Patrick Kerrigan, D.O. ("Dr. Kerrigan") completed a check-box/fill in the blank medical source statement about Plaintiff's ability to do physical work-related activities. (Admin. Tr. 741-746; Doc. 8-12, pp. 5-10). Dr. Kerrigan assessed that Plaintiff could: occasionally lift or carry up to ten pounds; sit for thirty minutes at one time without interruption, and for a total of two hours per eight-hour workday; stand for thirty minutes at one time without interruption, and stand for a total of one hour per eight-hour workday; walk for thirty minutes at one time without interruption, and stand for a total of one hour per eight-hour workday; occasionally balance, stoop, kneel, reach, handle, finger, and feel; never climb stairs or ramps, climb ladders or scaffolds, crouch, crawl, or operate foot controls; and cannot tolerate any exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, or vibrations. *Id.*

The ALJ assigned no weight to Dr. Kerrigan's opinion. In doing so, he

explained:

> In addition, the undersigned considered the Medical Source Statement of claimant's treating physician, Dr. Patrick Kerrigan, DO (Exhibit 19F). On March 26, 2018, Dr. Kerrigan opined limitations resulting from claimant's diagnosis of fibromyalgia *Id.* The undersigned assigns Dr. Kerrigan's opinions no weight as they apply currently to claimant's fibromyalgia diagnosis, which was made outside of the relevant period.

(Admin. Tr. 21; Doc. 8-2, p. 22).

> Plaintiff argues:

> The Administrative Law Judge especially abused his discretionary authority in addressing the physical impairments that the Plaintiff has. Ms. Schmoll treats with Dr. Kerrigan. Dr. Kerrigan's findings contain complaints that are similar to the findings and complaints contained throughout the entire record. Dr. Kerrigan also referred Ms. Schmoll to a neurologist Dr. Cote. Dr. Cote noted positive examination findings on physical examination on September 15, 2016. Ms. Schmoll notes that her date last insured is March 31, 2016; Dr. Cote and Dr. Kerrigan both relate the problems and complaints back to at least November of 2015, prior to her date of last insured.

> In a Functional Capacity Evaluation Dr. Kerrigan notes that, at best, the Plaintiff can perform sedentary work. However, Dr. Kerrigan notes that Ms. Schmoll cannot perform this work eight hours a day. (R. p. 142). This is due to her fibromyalgia. (R. p. 743). Dr. Kerrigan states that Ms. Schmoll cannot perform computer work, use public transportation, travel by herself or handle small objects or paper filed. (R. p. 744-46).

> The Administrative Law Judge does not provide any rationale why he rejects the opinion of Dr. Kerrigan and the opinion of Dr. Cote.

(Doc. 9, pp. 7-8).

In response, the Commissioner argues:

As an initial matter, Dr. Cote made no findings related to Plaintiff's work-related limitations, nor does Dr. Cote's notation of Plaintiff's self-reported complaints rise to the level of an opinion (Pl.'s Br. at 8). *See* 20 C.F.R. § 404.1527(a)(1) ("[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of you impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restriction").

Furthermore, the ALJ was not required to accord Dr. Kerrigan's extreme findings any significant weight for several reasons. First, as the ALJ stated, Dr. Kerrigan's opinion was made two years after Plaintiff's insured status expired, and related to a diagnosis made outside of the relevant period (Tr. 21, 406, 741-46).

Second, Dr. Kerrigan was not Plaintiff's provider for her fibromyalgia complaints. Third, Dr. Kerrigan's conclusions were not entitled to controlling weight because Dr. Kerrigan provided minimal responses, and no supporting explanation (Tr. 741-46). As the Third Circuit Court of Appeals stated in *Mason v. Shalala,* 994 F.2d 1058, 1060 (3d Cir. 1994), "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." It further observed that where the "[r]eports are unaccompanied by thorough written reports, their reliability is suspect . . . ." *Id. quoting Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). *See also* 20 C.F.R. § 404.1527(c)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). Fourth, Dr. Kerrigan's extreme findings are imply inconsistent with Plaintiff's conservative treatment for her fibromyalgia complaints, well after her insured status expired. *See* 20 C.F.R. § 404.1527(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). For example, as recently as April 2017 (more than one year after her insured status expired), Dr. Kerrigan's treatment notes reflect that Plaintiff denied ambulatory dysfunction, pain, and swelling; walked with a normal gait

and station; had a normal range of motion of both the upper and lower extremities; had a normal mood; and was able to concentrate (Tr. 637-38). Thus Dr. Kerrigan's form report does not support Plaintiff's claim.

(Doc. 11, pp. 12-14).

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent

of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

As an initial matter, I agree with the Commissioner that there does not appear to be any "medical opinion," as it is defined by 20 C.F.R. § 404.1527, by Dr. Cote in this record. Plaintiff does not cite to any opinion by Dr. Cote. Accordingly, I am

not persuaded that remand is required because the ALJ did not properly evaluate Dr. Cote's opinion.

With respect to Dr. Kerrigan's opinion, however, Plaintiff's argument has considerable merit. The ALJ discounted Dr. Kerrigan's opinion solely because it applied "currently to claimant's fibromyalgia diagnosis." The ALJ found that Plaintiff's impairment of fibromyalgia was medically determinable and severe during the relevant period. (Admin. Tr. 17; Doc. 8-2, p. 18).[3] I understand this as discounting Dr. Kerrigan's opinion because it does not relate to the relevant period in this case—between March 1, 2013, and March 31, 2016. Courts have held that "medical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Alston v. Astrue*, 2011 WL 4737605 at *3 (W.D. Pa. Oct. 5, 2011) (*citing Tezca v. Astrue*, No. 8-242, 2009 WL 1651536 at *9-10 (W.D. Pa. June 10, 2009). Thus, if Dr. Kerrigan's opinion does not relate to the relevant period, it would be proper to discount it for

---

[3] Later in the decision the ALJ noted that:

> Claimant reported she was experiencing whole body pain since November 2015 (Exhibit 4F/2). Claimant was diagnosed with fibromyalgia after her date last insured had expired (Exhibits 4F/2 and 9F/8). Nonetheless, the undersigned found claimant's fibromyalgia to be a severe impairment when forming claimant's residual functional capacity to give claimant the benefit of the doubt.

(Admin. Tr. 21; Doc. 8-2, p. 22).

this reason. The Commissioner notes in his Brief that this Medical Source Statement of Ability to Work was done by Dr. Kerrigan in March 2018 (Doc. 11, p. 9). However, the check-box form completed by Dr. Kerrigan also asked when the limitations were first present. Dr. Kerrigan responded to that question as follows:

> X.   THE LIMITATIONS ABOVE ARE ASSUMED TO BE YOUR OPINION REGARDING CURRENT LIMITATIONS ONLY.
>
> HOWEVER, IF YOUR HAVE SUFFICIENT INFORMATION TO FORM AN OPINION WITHIN A REASONABLE DEGREE OF MEDICAL PROBABILITY AS TO PAST LIMITATIONS, ON WHAT DATE WERE THE LIMITATIONS YOU FOUND ABOVE FIRST PRESENT? _____

(Admin. Tr. 746; Doc. 8-12, p. 10). Although this note borders on illegible, I find that Dr. Kerrigan assessed that the limitations he found in his opinion were first present on January 31, 2016—which is during the relevant period. Because the only reason cited by the ALJ in support of his decision to discount Dr. Kerrigan's opinion is not supported by the record, and this error could impact the outcome of this case. Therefore, on this narrow basis, remand is required for further evaluation of Dr. Kerrigan's opinion.

C.   PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand in this case, I need not address Plaintiff's remaining arguments. To the extent any further error exists, it may be addressed during the new administrative hearing on remand.

V.     CONCLUSION

Plaintiff's request for relief will be GRANTED as follows:

(1) The final decision of the Commissioner will be VACATED.

(2) This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be issued in favor of Sandra Schmoll.

(4) An appropriate Order will issue.

Date: June 18, 2020                         BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge